IN THE UNITED STATES DISRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
SHRIKANT BAROT,individually and on behalf    )
of all others similarly situated,                   )        Case No.:
                                           )
                Plaintiff,        )
     v.                                      )
                                           )
ST. JOHN'S UNIVERSITY,           )
                                           )
                Defendant.      )
--------------------------------------------------------------x

## CLASS ACTION COMPLAINT

Plaintiff, Shrikant Barot, individually and on behalf of all other similarly situated Graduate Teaching Assistants in the College of Pharmacy and Health Sciences at St. John's University (the "Class"), by and through his undersigned counsel, brings this action against Defendant St. John's University ("Defendant") for breach of contract and the covenant of good faith and fair dealing, violation of the New York Labor Laws, the New York State Human Rights Law, the New York City Human Rights law and the New York General Business Law § 349.

## INTRODUCTION

1.      Plaintiff is a former full-time St. John's University graduate student in the College of Pharmacy and Health Sciences and also taught St. John's University undergraduate students ("Graduate Teaching Assistant") in the Department of Pharmaceutical Science.

2.      From 2016 through 2021, Plaintiff worked as Graduate Teaching Assistant for Defendant. Plaintiff and the other Graduate Teaching Assistants in the College of Pharmacy and Health Sciences were provided with a uniform, non-negotiable, written contract each semester in which they worked for Defendant as a Graduate Teaching Assistant. These contracts provided, *inter alia*, that in exchange for working no more than twenty hours per week, the students would

1

receive a stipend which amounted to approximately $16.66 per working hour for the Fall and Spring semesters and $8.33 per working hour for the Summer semester, as well as a specified number of school credits to be provided tuition free by Defendant each semester. The contracts stated that the Graduate Teaching Assistant would commence work one week prior to the start of each semester and would work until the semester ended.

3.     Defendant, however, required Plaintiff and other Graduate Teaching Assistants in the College of Pharmacy and Health Sciences to work in excess of twenty hours per week, to commence work two weeks prior to the start of each semester, to work over winter break, and to be available to work "twenty-four/seven" during the semester, without any additional compensation.

4.     Defendant, moreover, routinely failed to provide the specified number of tuition-free credits each semester as set forth in the contracts.

5.     Making matters worse, Plaintiff and approximately 75% of the Graduate Teaching Assistants in the College of Pharmacy and Health Sciences have been foreign students on an F-1 Visa. As a result, Plaintiff and the other foreign students were prohibited by their visas from working more than twenty hours per week in exchange for compensation. Indeed, working for more than twenty hours per week in exchange for compensation would violate, and thus forfeit, their F-1 visa status. On information and belief, Defendant was well aware of the F-1 Visa work limitations, and Defendant thus took advantage of – and exploited – a captive foreign student labor market to extract additional work for no pay.

6.     As a result of Defendant's common unlawful acts, Plaintiff and the Class have not received the wages and other compensation promised to them in the uniform, written contracts and have not received the New York City minimum wage.

## THE PARTIES

7.      Plaintiff Shrikant Barot is a citizen of India and resident of the State of New Jersey.  From 2016 through 2021, Plaintiff was a full-time graduate student in the College of Pharmacy and Health Sciences at St. John's University on an F-1 Student Visa.  During this time, Plaintiff worked as a Graduate Teaching Assistant in the Department of Pharmaceutical Science.

8.      Defendant St. John's University is a private university located at 8000 Utopia Parkway, Queens, New York 11439.

## JURISDICTION AND VENUE

9.      This Court has jurisdiction over this action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (codified in various sections of 28 U.S.C.).

10.     Plaintiff is a citizen and resident of a different state from Defendant.  Plaintiff is a citizen of India and a resident of New Jersey.  Defendant is a citizen and resident of New York.  The  amount in controversy exceeds $5,000,000 and there are at least one hundred members of the putative class.

11.     This Court has jurisdiction over Defendant because it is located in New York and is authorized to conduct business in New York, is doing or did business in New York during the relevant time period and have registered with the New York Secretary of State, or does sufficient business in New York, has sufficient minimum contacts with New York, or otherwise intentionally avails itself of the New York consumer market.

12.     This Court has subject-matter jurisdiction under CAFA because the amount in controversy exceeds $5 million and diversity exists between Plaintiff and Defendant.  28 U.S.C.

§ 1332(d)(2).  Further, in determining whether the $5 million amount in controversy requirement of 28 U.S.C. § 1332(d) (2) is met, the claims of the putative class members are aggregated.  28 U.S.C. § 1332(d)(6).

13.     Venue is proper in this forum pursuant to 28 U.S.C. § 1391 because Defendant transacts business and may be found in this District and a substantial portion of the practices complained of herein occurred in the Eastern District of New York.

14.     All conditions precedent to this action have occurred, been performed, or have been waived.

## STATEMENT OF FACTS

15.     From 2016 through 2021, Plaintiff was enrolled as a full-time graduate student in the College of Pharmacy and Health Sciences at St. John's University.  During this time, Plaintiff was a foreign student on an F-1 Visa.  Throughout the majority of his enrollment as a full-time graduate student, Plaintiff worked as a Graduate Teaching Assistant for St John's University in the Division of Pharmaceutical Sciences.

16.     Plaintiff and Defendant entered into a series of uniform, written contracts setting forth Plaintiff's engagement as a Teaching Assistant.  Indeed, each full-time graduate student who, like Plaintiff, worked for Defendant as a Teaching Assistant in the College of Pharmacy and Health Sciences was required to enter into materially identical, non-negotiable, standardized and uniform, written contracts with Defendant setting forth the terms of their engagement.

A. **The  Uniform and Standardized Graduate Teaching Assistant Contracts**

1. **The Fall 2016 Semester and Spring 2017 Semester Contract**

17.     On July 27, 2016, Plaintiff and Defendant into a standard written contract for Plaintiff to work as a Graduate Teaching Assistant in the Department of Pharmaceutical Science

4

at St. John's University for the Fall 2016 and Spring 2017 semesters (the "Fall 2016/Spring 2017 Contract"). A copy of the Fall 2016/Spring 2017 Contract is attached hereto as Exhibit A.

18.     Pursuant to paragraph 2 the Fall 2016/Spring 2017 Contract, Plaintiff was required during the term of the agreement (*i.e.*, September 1, 2016 through May 31, 2017) to "devote himself/herself diligently and cooperatively for a maximum of 20 hours per week to the duties of a Graduate Assistant . . . as indicated above including any activity which will prove beneficial to the Department/Office in the judgment of any one of more of the following persons: The President of the University, the Academic (or other appropriate) Vice President, the Dean, the Director, or other such administrator(s) to whom he/she is assigned. Recipient further agrees to render such services in a scholarly and efficient manner to the satisfaction of all of the aforementioned individuals."

19.     Pursuant to paragraph 1 of the Fall 2016/Spring 2017 Contract, and in exchange for his work as a Graduate Teaching Assistant, Plaintiff would receive a stipend amount of $12,000.00 "paid in 18 equal semi-monthly installments and tuition coverage for 12 credit(s) per semester."

20.     Pursuant to paragraph 6 of the Fall 2016/Spring 2017 Contract, it stated that the "contract term for all standard one-year Doctoral Fellows and Graduate Assistants is one week prior to the first day of classes for the Fall semester through the last day of final exams in the Spring semester. . . . If a Doctoral Fellow of Graduate Assistant is required to work during holidays or breaks, it must be stated in his/her GA description and must be approved by the Office of the Provost."

## 2. **The Summer 2017 Semester Contract**

21.     On May 29, 2017, Plaintiff and Defendant into a standard written contract for Plaintiff to work as a Graduate Teaching Assistant in the Department of Pharmaceutical Science at St. John's University for the Summer 2017 semester (the "Summer 2017 Contract").  A copy of the Summer 2017 Contract is attached hereto as Exhibit B.

22.     Pursuant to paragraph 2 the Summer 2017 Contract, Plaintiff was required during the term of the agreement (i.e., May 19, 2017 through July 1, 2017) to "devote himself/herself diligently and cooperatively for a maximum of 20 hours per week to the duties of a Graduate Assistant . . . as indicated above including any activity which will prove beneficial to the Department/Office in the judgment of any one of more of the following persons:  The President of the University, the Academic (or other appropriate) Vice President, the Dean, the Director, or other such administrator(s) to whom he/she is assigned.  Recipient further agrees to render such services in a scholarly and efficient manner to the satisfaction of all of the aforementioned individuals."

23.     Pursuant to paragraph 1 of the Summer 2017 Contract, and in exchange for his work as a Graduate Teaching Assistant, Plaintiff would receive a stipend amount of $1,000.00 "paid in 3 equal semi-monthly installments and tuition coverage for 3 credit(s) per semester."

24.     Pursuant to paragraph 6 of the Summer 2017 Contract, it stated that the "contract term for all standard one-year Doctoral Fellows and Graduate Assistants is one week prior to the first day of classes for the Fall semester through the last day of final exams in the Spring semester.  . . . If a Doctoral Fellow of Graduate Assistant is required to work during holidays or breaks, it must be stated in his/her GA description and must be approved by the Office of the Provost."

### 3. **The Fall 2017 Semester and Spring 2018 Semester Contract**

25.     On August 1, 2017, Plaintiff and Defendant into a standard written contract for Plaintiff to work as a Graduate Teaching Assistant in the Department of Pharmaceutical Science at St. John's University for the Fall 2017 semester and the Spring 2018 semester (the "Fall 2017/Spring 2018 Contract").  A copy of the Fall 2017/Spring 2018 Contract is attached hereto as Exhibit C.

26.     Pursuant to paragraph 2 the Fall 2017/Spring 2018 Contract, Plaintiff was required during the term of the agreement (i.e., September 1, 2017 through May 31, 2018) to "devote himself/herself diligently and cooperatively for a maximum of 20 hours per week to the duties of a Graduate Assistant . . . as indicated above including any activity which will prove beneficial to the Department/Office in the judgment of any one of more of the following persons: The President of the University, the Academic (or other appropriate) Vice President, the Dean, the Director, or other such administrator(s) to whom he/she is assigned.  Recipient further agrees to render such services in a scholarly and efficient manner to the satisfaction of all of the aforementioned individuals."

27.     Pursuant to paragraph 1 of the Fall 2017/Spring 2018 Contract, and in exchange for his work as a Graduate Teaching Assistant, Plaintiff would receive a stipend amount of $12,000.00 "paid in 18 equal semi-monthly installments and tuition coverage for 9 credit(s) per semester."

28.     Pursuant to paragraph 6 of the Fall 2017/Spring 2018 Contract, it stated that the "contract term for all standard one-year Doctoral Fellows and Graduate Assistants is one week prior to the first day of classes for the Fall semester through the last day of final exams in the Spring semester.  . . . If a Doctoral Fellow of Graduate Assistant is required to work during

holidays or breaks, it must be stated in his/her GA description and must be approved by the Office of the Provost."

### 4.  <u>The Summer 2018 Semester Contract</u>

29.     On May 9, 2018, Plaintiff and Defendant into a standard written contract for Plaintiff to work as a Graduate Teaching Assistant in the Department of Pharmaceutical Science at St. John's University for the Summer 2018 semester (the "Summer 2018 Contract").  A copy of the Summer 2018 Contract is attached hereto as Exhibit D.

30.     Pursuant to paragraph 2 the Summer 2018 Contract, Plaintiff was required during the term of the agreement (i.e., June 1, 2018 through July 15, 2018) to "devote himself/herself diligently and cooperatively for a maximum of 20 hours per week to the duties of a Graduate Assistant . . . as indicated above including any activity which will prove beneficial to the Department/Office in the judgment of any one of more of the following persons:  The President of the University, the Academic (or other appropriate) Vice President, the Dean, the Director, or other such administrator(s) to whom he/she is assigned.  Recipient further agrees to render such services in a scholarly and efficient manner to the satisfaction of all of the aforementioned individuals."

31.     Pursuant to paragraph 1 of the Summer 2018 Contract, and in exchange for his work as a Graduate Teaching Assistant, Plaintiff would receive a stipend amount of $1,000.00 "paid in 3 equal semi-monthly installments and tuition coverage for 3 credit(s) per semester."

32.     Pursuant to paragraph 6 of the Summer 2018 Contract, it stated that the "contract term for all standard one-year Doctoral Fellows and Graduate Assistants is one week prior to the first day of classes of the semester through the last day of final exams of the semester."

### 5. **The Fall 2018 Semester and Spring 2019 Semester Contract**

33.     On July 16, 2018, Plaintiff and Defendant into a standard written contract for Plaintiff to work as a Graduate Teaching Assistant in the Department of Pharmaceutical Science at St. John's University for the Fall 2018 semester and Spring 2019 semester (the "Fall 2018/Spring 2019 Contract").  A copy of the Fall 2018/Spring 2019 Contract is attached hereto as Exhibit E.

34.     Pursuant to paragraph 2 the Fall 2018/Spring 2019 Contract, Plaintiff was required during the term of the agreement (i.e., September 1, 2018 through May 31, 2019) to "devote himself/herself diligently and cooperatively for a maximum of 20 hours per week to the duties of a Graduate Assistant . . . as indicated above including any activity which will prove beneficial to the Department/Office in the judgment of any one of more of the following persons: The President of the University, the Academic (or other appropriate) Vice President, the Dean, the Director, or other such administrator(s) to whom he/she is assigned.  Recipient further agrees to render such services in a scholarly and efficient manner to the satisfaction of all of the aforementioned individuals."

35.     Pursuant to paragraph 1 of the Fall 2018/Spring 2019 Contract, and in exchange for his work as a Graduate Teaching Assistant, Plaintiff would receive a stipend amount of $12,000.00 "paid in 18 equal semi-monthly installments and tuition coverage for 9 credit(s) per semester."

36.     Pursuant to paragraph 6 of the Fall 2018/Spring 2019 Contract, it stated that the "contract term for all standard one-year Doctoral Fellows and Graduate Assistants is one week prior to the first day of classes for the Fall semester through the last day of final exams in the Spring semester.  . . . If a Doctoral Fellow of Graduate Assistant is required to work during

holidays or breaks, it must be stated in his/her GA description and must be approved by the Office of the Provost."

### 6.  The Fall 2019 Semester and Spring 2020 Semester Contract

37.     On July 19, 2019, Plaintiff and Defendant into a standard written contract for Plaintiff to work as a Graduate Teaching Assistant in the Department of Pharmaceutical Science at St. John's University for the Fall 2019 semester and Spring 2020 semester (the Fall 2019/Spring 2020 Contract").  A copy of the Fall 2019/Spring 2020 Contract is attached hereto as Exhibit F.

38.     Pursuant to paragraph 2 the Fall 2019/Spring 2020 Contract, Plaintiff was required during the term of the agreement (i.e., September 1, 2019 through May 31, 2020) to "devote himself/herself diligently and cooperatively for a maximum of 20 hours per week to the duties of a Graduate Assistant . . . as indicated above including any activity which will prove beneficial to the Department/Office in the judgment of any one of more of the following persons: The President of the University, the Academic (or other appropriate) Vice President, the Dean, the Director, or other such administrator(s) to whom he/she is assigned.  Recipient further agrees to render such services in a scholarly and efficient manner to the satisfaction of all of the aforementioned individuals."

39.     Pursuant to paragraph 1 of the Fall 2019/Spring 2020 Contract, and in exchange for his work as a Graduate Teaching Assistant, Plaintiff would receive a stipend amount of $12,000.00 "paid in 18 equal semi-monthly installments and tuition coverage for 9 credit(s) per semester."

40.     Pursuant to paragraph 6 of the Fall 2019/Spring 2020 Contract, it stated that the "contract term for all standard one-year Doctoral Fellows and Graduate Assistants is one week

prior to the first day of classes for the Fall semester through the last day of final exams in the Spring semester.  . . . If a Doctoral Fellow of Graduate Assistant is required to work during holidays or breaks, it must be stated in his/her GA description and must be approved by the Office of the Provost."

### 7.  **The Fall 2020 Semester and Spring 2021 Semester Contract**

41.     On July 27, 2020, Plaintiff and Defendant into a standard written contract for Plaintiff to work as a Graduate Teaching Assistant in the Department of Pharmaceutical Science at St. John's University for the Fall 2020 semester and Spring 2021 semester (the Fall 2020/Spring 2021 Contract").  A copy of the Fall 2020/Spring 2021 Contract is attached hereto as Exhibit G.

42.     Pursuant to paragraph 2 the Fall 2020/Spring 2021 Contract, Plaintiff was required during the term of the agreement (i.e., September 1, 2020 through May 31, 2021) to "devote himself/herself diligently and cooperatively for a maximum of 20 hours per week to the duties of a Graduate Assistant . . . as indicated above including any activity which will prove beneficial to the Department/Office in the judgment of any one of more of the following persons: The President of the University, the Academic (or other appropriate) Vice President, the Dean, the Director, or other such administrator(s) to whom he/she is assigned.  Recipient further agrees to render such services in a scholarly and efficient manner to the satisfaction of all of the aforementioned individuals."

43.     Pursuant to paragraph 1 of the Fall 2020/Spring 2021 Contract, and in exchange for his work as a Graduate Teaching Assistant, Plaintiff would receive a stipend amount of $12,000.00 "paid in 18 equal semi-monthly installments and tuition coverage for 9 credit(s) per semester."

44.     Pursuant to paragraph 6 of the Fall 2020/Spring 2021 Contract, it stated that the "contract term for all standard one-year Doctoral Fellows and Graduate Assistants is one week prior to the first day of classes for the Fall semester through the last day of final exams in the Spring semester. . . . If a Doctoral Fellow of Graduate Assistant is required to work during holidays or breaks, it must be stated in his/her GA description and must be approved by the Office of the Provost."

### B.     Defendant Breaches The Standard, Uniform Graduate Teaching Assistant Contracts

45.     As a Graduate Teaching Assistant in the College of Pharmacy and Health Sciences at St. John's University from 2016 through 2021, Plaintiff was responsible for teaching three laboratory classes and one practice lab session (the "lab" or "labs") per week. Each lab lasted approximately three and a half hours. Plaintiff was required to prepare for each lab by reviewing the lab manual, which on average was between fifteen and twenty pages per lab. Plaintiff also was required to review and prepare the questions and answers for each lab. Other tasks, such as preparing for midterm exams, were assigned to Plaintiff throughout the semester. It was not reasonably possible for Plaintiff to perform all of the work assigned to him each week in 20 hours or less.

46.     In addition to these weekly responsibilities for the labs, which typically required Plaintiff to work in excess of twenty hours per week, Plaintiff was required to be "on call" twenty four/seven for his department, to work for two weeks prior to the start of each semester, rather than the one week prior to the semester set forth in his contract, and to make himself available to work during the winter break and holidays. Indeed, Plaintiff and other Graduate Teaching Assistants routinely worked over the winter break commencing on or around January 10, and continuing until the start the Spring semester. Upon information and belief, this

additional work was not pre-approved by the Provost, as was required by the standardized contracts.

47.     Moreover, Plaintiff and the other Graduate Teaching Assistants at the College of Pharmacy and Health Sciences were required to obtain written permission on a standardized form provided by Defendant in order to take leave for sick or personal days, even when classes were not in session.

48.     As a result, Plaintiff was required to and did work more than the maximum 20 hours per week set forth in the standard, uniform Graduate Teaching Assistant contracts with Defendant.  Indeed, Plaintiff routinely worked 25 hours per week or more in order to complete the tasks assigned to him by the Department of Pharmaceutical Sciences.  Plaintiff, moreover, was required to work prior to the start of the semester contracts, including over breaks and holidays, without additional pay and to be "on call 24/7."

49.     Plaintiff was not compensated for work in excess of twenty hours per week.

50.     In addition to requiring Plaintiff to work in excess of the stated maximum 20 hours per week without additional compensation, Defendant routinely failed to provide the promised number of tuition free credits per semester as set forth in the standard, uniform Graduate Teaching Assistant contracts.  Indeed, Defendant failed to provide Plaintiff with a total of 56 tuition free credits as promised in the written contracts:

> a.  For the Fall 2016 Semester,  Plaintiff's contract stated that Defendant would provide a total of 12 credits tuition free.  Plaintiff received only 9 tuition free credits.  Each credit was worth approximately $1,350.00 at this time.

b.  For the Spring 2017 Semester, Plaintiff's contract stated that Defendant would provide a total of 12 credits tuition free.  Plaintiff received only 6 tuition free credits.  Each credit was worth approximately $1,350.00 at this time.

c.  For the Summer 2017 Semester, Plaintiff's contract stated that Defendant would provide a total of 3 credits tuition free.  Plaintiff received zero tuition free credits.  Each credit was worth approximately $1,350.00 at this time.

d.  For the Fall 2017 Semester, Plaintiff's contract stated that Defendant would provide a total of 9 credits tuition free.  Plaintiff received only 6 tuition free credits.  Each credit was worth approximately $1,385.00 at this time.

e.  For the Fall 2018 Semester, Plaintiff's contract stated that Defendant would provide a total of 9 credits tuition free.  Plaintiff received only 3 tuition free credits.  Each credit was worth approximately $1,420.00 at this time.

f.  For the Spring 2019 Semester, Plaintiff's contract stated that Defendant would provide a total of 9 credits tuition free.  Plaintiff received only 3 tuition free credits.  Each credit was worth approximately $1,420.00 at this time.

g.  For the Fall 2019 Semester, Plaintiff's contract stated that Defendant would provide a total of 9 credits tuition free.  Plaintiff received only 3

tuition free credits.  Each credit was worth approximately $1,420.00 at this time.

    h.  For the Spring 2020 Semester, Plaintiff's contract stated that Defendant would provide a total of 9 credits tuition free.  Plaintiff received only 3 tuition free credits.  Each credit was worth approximately $1,505.00 at this time.

    i.  For the Fall 2020 Semester, Plaintiff's contract stated that Defendant would provide a total of 9 credits tuition free.  Plaintiff received only 4 tuition free credits.  Each credit was worth approximately $1,505.00 at this time.

    j.  For the Spring 2021 Semester, Plaintiff's contract stated that Defendant would provide a total of 9 credits tuition free.  Plaintiff received zero tuition free credits.  Each credit was worth approximately $1,505.00 at this time.

51.    As a result of receiving zero tuition free credits for the Spring 2021 Semester and a stipend which amounted to $16.66 per hour for a maximum of 20 hours of work per week, Plaintiff did not receive the New York City minimum wage of $15.00 per hour for the weeks in which he worked more than 23 hours during the Spring 2021 Semester.  On average, Plaintiff worked 25 hours per week during the Spring 2021 Semester.

52.    From his discussions with fellow Graduate Teaching Assistants in the Department of Pharmaceutical Sciences and in the College of Pharmacy and Health Sciences, Plaintiff understood that his experience was not unique.  Many other Graduate Teaching Assistants were

being required to work in excess of the maximum 20 hours per week and were not receiving the total number of tuition free credits per semester.

53.     With respect to the tuition free credits, although Plaintiff and other members of the Class requested to register for the full number of tuition free credits each semester, Plaintiff and other members of the Class commonly were unable to register for the full number of represented tuition free credits within their designated graduate programs each semester due to the structure of the programs themselves.  In addition, because Plaintiff's program required a total of 60 credits, Plaintiff was unable to register for more than that amount.  Moreover, Defendant did not permit Plaintiff and the other Class members to use the tuition free credits to take classes in other departments whatsoever.  Nor did Defendant permit Plaintiff and other Class members to use the tuition free credits to take classes outside of their designated graduate programs, without a letter from their advisor to the Department Chair and approval therefrom.

54.     Plaintiff made numerous complaints to Defendant concerning his being required to work in excess of the maximum 20 hours per week without additional compensation and not receiving the total represented tuition-free credits per semester.  Plaintiff directed his complaints to Mary Cascio, in Human Resources as St. John's University, Felicia Isabel Carvalho, Ph.D., the Director of Laboratories for the Department of Pharmaceutical and Health Sciences as St. John's University, Joyce Festa, the Assistant Director of Laboratories for the Department of Pharmaceutical  and Health Sciences at St. John's University, and Vijaya Korlipara, Ph.D., the Chair of the Department of Pharmaceutical and Health Sciences.  Plaintiff understands that at least forty other graduate students in the College of Pharmacy and Health Sciences have made similar complaints.

## CLASS ACTION ALLEGATIONS

55.     Plaintiff brings this action pursuant to Federal Rule of Civil Procedure, Rule 23(a) and (b) on behalf of a Class defined as follows:

> All Graduate Teaching Assistants at the College of Pharmacy and Health Sciences at St. John's University from August 16, 2016, to the present.

56.     Plaintiff reserves the right to modify or amend the definition of the proposed class before the Court determines whether certification is appropriate.

57.     Defendant subjected Plaintiff and the respective Class members to the same unfair and unlawful practices and harmed them in the same manner.

**Numerosity**

58.     The proposed class is so numerous that joinder of all members would be impracticable.   From August 16, 2016 to the present, there have been more than 100 Graduate Teaching Assistance in the College of Pharmacy and Health Sciences at St. John's University each year.  The individual class members are ascertainable, as the names and addresses of all class members can be identified in the business records maintained by Defendants.  The precise number of class members can be obtained through discovery, but the numbers are clearly more than can be consolidated in one complaint such that it would be impractical for each member to bring suit individually.  Plaintiff does not anticipate any difficulties in the management of the action as a class action.

**Commonality**

59.     There are questions of law and fact that are common to Plaintiff's and class members' claims.

60.     These common questions predominate over any questions that go particularly to any individual member of the Class.  Among such common questions of law and fact are the following:

a.  Whether Defendant breached its contracts with Plaintiff and the Class by (a) requiring Plaintiff and members of the Class to work in excess of the maximum 20 hours per week without additional pay; (b) failing to provide Plaintiff and members of the Class with the total credits (tuition free) per semester as set forth in the written contacts; (c) requiring Plaintiff and the Class to work two weeks prior to the start of each semester without additional pay; (d) requiring Plaintiff and the Class to be "on call" twenty four/seven during the semester; and (e) requiring Plaintiff and the Class to work during the winter break and holidays without additional pay.

b.  Whether Defendant violated the New York Labor Law by failing to pay Plaintiff and the Class the New York City minimum wage and otherwise failed to pay full wages, benefits and wage supplements;

c.  Whether Defendant violated the New York GBL § 349 with respect to Plaintiff and a Subclass of F-1 Visa holders;

d.  Whether Defendant violated the New York State Human Rights Law and New York City Human Rights Law with respect to Plaintiff and a Subclass of F-1 Visa holders; and

e.  whether Plaintiff and the Class and Subclass have suffered damages as a result of Defendant's actions and the amount thereof.

**Typicality**

61.     Plaintiff is a member of the Class he seeks to represent.  Plaintiff's claims are typical of claims of the other Class and Subclass members because of the uniform written contracts for all Graduate Teaching Assistants in the College of Pharmacy and Health Sciences at St. John's University and the similarity, uniformity, and common purpose of the  Defendant's unlawful  conduct in breach of the uniform, written contacts and in violation of the New York Labor Law, New York GBL § 349, the New York State Human Rights Law and the

New York City Human Rights Law. Each Class member has sustained, and will continue to sustain, damages in the same manner as Plaintiff as a result of Defendant's wrongful conduct.

**Adequacy of Representation**

62. Plaintiff is an adequate representative of the Class he seeks to represent and will fairly and adequately protect the interests of that Class. Plaintiff is committed to the vigorous prosecution of this action and has retained competent counsel, experienced in litigation of this nature, to represent him. There is no hostility between Plaintiff and the unnamed Class members. Plaintiff anticipates no difficulty in the management of this litigation as a class action.

63. To prosecute this case, Plaintiff has chosen the undersigned law firm which is experienced in class action litigation, including wage and hour violations, and has the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

**Requirements of Fed. R. Civ. P. 23(b)(3)**

64. The questions of law or fact common to Plaintiff's and each Class member's claims predominate over any questions of law or fact affecting only individual members of the Class. All claims by Plaintiff and the unnamed Class and Subclass members are based on Defendant's common breach of the uniform written contracts with the Graduate Teaching Assistants in the College of Pharmacy and Health Sciences at St. John's University and related violations of the New York Labor Law, New York GBL § 349, the New York State Human Rights Law and the New York City Human Rights Law.

65. Common issues predominate when, as here, liability can be determined on a class-wide basis, even when there will be some individualized damages determinations.

66.     As a result, when determining whether common questions predominate, courts focus on the liability issue, and if the liability issue is common to the class, as is the case at bar, common questions will be held to predominate over individual questions.

**Superiority**

67.     A class action is superior to individual actions in part because of the non-exhaustive factors listed below:

(a) Joinder of all Class members would create extreme hardship and inconvenience as they reside across the states;

(b) Individual claims by Class members are impractical because the costs to pursue individual claims may exceed the value of what any one Class member has at stake. As a result, individual Class members have no interest in prosecuting and controlling separate actions;

(c) There are no known individual Class members who are interested in individually controlling the prosecution of separate actions;

(d) The interests of justice will be well served by resolving the common disputes of potential Class members in one forum;

(e) Individual suits would not be cost effective or economically maintainable as individual actions; and

(f) The action is manageable as a class action.

**Requirements of Fed. R. Civ. P. 23(b)(1) & (2)**

68.     Prosecuting separate actions by or against individual Class members would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class.

69.     Defendant has acted or failed to act in a manner generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

## FIRST CAUSE OF ACTION

### Breach of Contract and Violation of the Covenant of Good Faith and Fair Dealing

70.      Plaintiff repeats and realleges each preceding paragraph of the Complaint as if fully set forth herein.

71.      Plaintiff and the other members of the Class have executed standard, uniform contracts for Graduate Teaching Assistants in the College of Pharmacy and Health Sciences with St. John's University.

72.      A covenant of good faith and fair dealing is implied in every contract, including the standard, uniform contracts at issue here.

73.      Plaintiff and the other members of the Class have fully performed under the standard, uniform contracts, or performance has been waived by Defendant.

74.      Defendant has breached the terms of the standard, uniform contracts and the covenant of good faith and fair dealing implied therein by (a) requiring Plaintiff and members of the Class to work in excess of the maximum 20 hours per week stated in the contact without additional pay; (b) failing to provide Plaintiff and members of the Class with the total credits (tuition free) per semester as set forth in the written contacts; (c) requiring Plaintiff and the Class to work two weeks, rather than just one week, prior to the start of each semester without additional pay; (d) requiring Plaintiff and the Class to be "on call" twenty four/seven during the semester; and (e) requiring Plaintiff and the Class to work during the winter break and holidays without additional pay.

75.      Plaintiff and the other members of the Class have been damaged as a direct result of Defendant's breach.

## **SECOND CAUSE OF ACTION**

### **Violation Of The New York Labor Law**

76.     Plaintiff repeats and realleges each preceding paragraph of the Complaint as if fully set forth herein.

77.     Plaintiff and other members of the Class were "employees" of Defendant and Defendant was the "employer" of Plaintiff and the other members of the Class, as those terms are defined by the New York Labor Law.

78.     Article 6 of the New York Labor Law (titled "Payment of Wages") generally provides protections to employees who believe their wages have been unlawfully withheld from them by their employer.

79.     Section 193(5) of the New York Labor Law provides "[t]here is no exception to liability under this section for the unauthorized failure to pay wages, benefits or wage supplements."

80.     Pursuant to its standardized, written contracts with Graduate Teaching Assistants in the College of Pharmacy and Health Sciences, Defendant was obligated to pay Plaintiff and the other members of the Class an hourly rate of pay, either $16.66 per hour for the Fall and Spring semesters, or $8.33 per hour for the Summer semesters, for a maximum of 20 hours of work per week.  Defendant also was obligated to provide a set number of credits tuition-free to Plaintiff and the other members of the Class per semester.

81.     Defendant failed to compensate Plaintiff and the other members of the Class for hours worked in excess of 20 hours per week and failed to provide the represented number of tuition free credits per semester.

22

82.     Defendant also failed to provide Plaintiff and the other members of the Class with a statement with every payment of wages listing, *inter alia*, the dates of work covered by that payment of wages, the rate of pay and basis thereof, the regular hourly rate or rates of pay, and the number of regular hours worked.

83.     In addition, New York Labor Law § 652 provides that every employer in New York City with eleven or more employees shall pay each of its employees for each hour worked in the City of  New York a wage of not less than: (a) $11.00 per hour on and after December 31, 2016; (b) $13.00 per hour on and after December 31, 2017; and (c) $15.00 per hour on and after December 31, 2018.

84.     Defendant violated New York Labor Law § 652 by failing to pay Plaintiff the minimum wage during the Summer 2017 Semester, where he was paid only $8.33 per hour, and during  the Spring 2021 Semester for every week in which Plaintiff worked more than 23 hours per week (he worked on average 25 hours per week).  Plaintiff received zero of the tuition free credits promised to him in the Summer 2017 Semester and Spring 2021 Semester.  Upon information and belief, Defendant failed to pay other Class members the New York City minimum wage (a) during the Fall and Spring semesters in which the members of the Class received zero of the promised tuition free credits and worked in excess of 23 hours per week because the Fall and Spring semester stipend amounted to $16.66 per hour based on a maximum of 20 hours of work per week; and (b) during the Summer semesters in which the promised tuition free credits were not provided because the Summer semester stipend amounted to $8.33 per hour based on a maximum 20 hours per week.

85.     Defendant's acts were knowing, deliberate and willful and are in direct contravention of the New York Labor Law §§191(1)(a), 193, 195(3), and 652, and are actionable under §198.

86.     As a result of Defendant's willful and unlawful conduct, Plaintiff and the other members of the Class are entitled to an award of damages in an amount to be determined at trial, plus liquidated damages.

### THIRD CAUSE OF ACTION

### Violation Of New York General Business Law § 349

87.     Plaintiff repeats and realleges each preceding paragraph of the Complaint as if fully set forth herein.

88.     Plaintiff brings this cause of action on behalf of himself and a Subclass of Graduate Teaching Assistants who are or were F-1 visa holders.

89.     Defendant's acts and practices alleged herein constitute acts, uses, or employment by Defendant and its agents of deception, fraud, unconscionable and unfair commercial practices, false pretenses, false promises, misrepresentations, or the knowing concealment, suppression, or omission of material facts with the intent that others rely upon such concealment, suppression, or omission, in connection with the sale or advertisement of merchandise, and with the subsequent performance, of Defendant in violation of § 349 of New York's General Business Law, making deceptive and unfair acts and practices illegal.

90.     Defendant's false, deceptive and unfair practices included making representations to F-1 Visa holders that there were attractive and lawful opportunities for these students to work at St. John's University, with hours not to exceed a maximum of 20 hours per week, in exchange

for a stipend and tuition free credits per semester, including the Graduate Teaching Assistant program for graduate students in the College of Pharmacy and Health Sciences.

91.     Defendant's representations were false because Defendant knew that Graduate Teaching Assistants were required to work in excess of 20 hours per week without additional compensation and that Defendant routinely did not provide the total number of tuition free credits per semester as represented in the written contracts.

92.     All of Defendant's deceptive, false, unfair and unlawful acts and practices occurred in the State of New York.

93.     Defendant's conduct is deceptive because it is likely to mislead foreign students, who are members of the consuming public, that by attending St. John's University and working for Defendant as Graduate Teaching Assistant, that Plaintiff and the other members of the Class will be compensated fairly and adequately in accordance with uniform, written contracts and applicable labor laws, including the New York City minimum wage requirements, and would not risk the status of their F-1 student visas.  Indeed, Defendant knew and failed to disclose that its employment practices for Graduate Teaching Assistants violated the written contracts and New York Labor Laws.  Defendant also knew, or reasonably should have known, that foreign students would not risk violating their F-1 Visas by complaining of unfair labor practices and/or demanding compensation for hours worked in excess of 20 hours per week.

94.     Plaintiff and approximately 75% of the Graduate Teaching Assistants in the College of Pharmacy and Health Sciences at St. John's University are or were foreign students on an F-1 Visa.

95.     Students on F-1 Visas have limited ability to work legally in the United States. Moreover, the cost of living and the price of tuition at private universities in the United States is

often far out of reach for foreign students.  One of the few opportunities available to foreign students to work legally in the United States and help offset the higher cost of living and tuition are work/study programs, such as the Graduate Teaching Assistant programs that Defendant offered to full time graduate students in the College of Pharmacy and Health Sciences.

96.     Defendant thus attracted Plaintiff and other talented foreign students to its College of Pharmacy and Health Sciences under false pretenses, with false representations about lawful work/study opportunities available to F-1 Visa holders.

97.     When Plaintiff complained to Defendant that he was being required to work in excess of 20 hours per week without compensation as a Graduate Teaching Assistant, Defendant, in sum and substance, informed Plaintiff that he would risk forfeiting his F-1 Visa status if he was compensated for the additional work.  In other words, Defendant knew that it had a large, captive foreign student work force that it could exploit for excess hours of work without paying additional compensation, and in some instances, without paying the New York City minimum wage in violation of the New York Labor Laws– an unlawful, deceptive and unfair practice.

98.     The unfair and deceptive trade acts and practices of Defendant have directly, foreseeably, and proximately caused damages and injury to Plaintiff and the Subclass comprised of F-1 Visa holders.

99.     Plaintiff has no adequate remedy of law.

## FOURTH CAUSE OF ACTION

### Violation Of The New York State Human Rights Law

100.     Plaintiff repeats and realleges each preceding paragraph of the Complaint as if fully set forth herein.

101.    Plaintiff brings this cause of action on behalf of himself and a Subclass of Graduate Teaching Assistants who are or were foreign students with F-1 visas.

102.    Defendant's acts and practices of requiring the Graduate Teaching Assistants in the College of Pharmacy and Health Sciences at St. John's University to work in excess of 20 hours per week without additional compensation, and sometimes at wages below the New York City minimum wage, have a disparate and discriminatory impact on foreign students.  Defendant thus has engaged in national origin discrimination.

103.    Indeed, approximately 75% of the Graduate Teaching Assistants in the College of Pharmacy and Health Sciences at St. John's University are or have been foreign students on an F-1 Visa.

104.    Defendant knows, or reasonably should know, that foreign students risk forfeiting their F-1 Visa status if they receive compensation for work in excess of 20 hours per week. Defendant knew that it had a large, captive foreign student work force that it could exploit for excess hours of work without paying additional compensation, and in some instances, without paying the New York City minimum wage.

105.    Defendant's acts and practices are in violation of the New York State Human Rights Law, §296, which prohibits unlawful discriminatory practices in employment, including discrimination in compensation or in terms, conditions, or privileges of employment because of an individual's national origin.

106.    As a result of Defendant's violation of the New York State Human Rights Law, Plaintiff and the other members of the Subclass have suffered damages.

## FIFTH CAUSE OF ACTION

### Violation Of The New York City Human Rights Law

107.     Plaintiff repeats and realleges each preceding paragraph of the Complaint as if fully set forth herein.

108.     Plaintiff brings this cause of action on behalf of himself and a Subclass of Graduate Teaching Assistants who are or were foreign students with F-1 visas.

109.     Defendant's acts and practices of requiring the Graduate Teaching Assistants in the College of Pharmacy and Health Sciences at St. John's University to work in excess of 20 hours per week without additional compensation, and sometimes at wages below the New York City minimum wage, have a disparate and discriminatory impact on foreign students.

110.     Indeed, approximately 75% of the Graduate Teaching Assistants in the College of Pharmacy and Health Sciences at St. John's University are foreign students on an F-1 Visa.

111.     Defendant knows, or reasonably should know, that foreign students risk forfeiting their F-1 Visa status if they receive compensation for work in excess of 20 hours per week. Defendant knew that it had a large, captive foreign student work force that it could exploit for excess hours of work without paying additional compensation, and in some instances, without paying the New York City minimum wage.

112.     Defendant's acts and practices are in violation of the New York City Human Rights Law, §8-107(1)(a), which prohibits unlawful discriminatory practices in employment, including discrimination in compensation or in terms, conditions or privileges of employment because of an individual's national origin.

113.     As a result of Defendant's violation of the New York City Human Rights Law, Plaintiff and other members of the Subclass have suffered damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

A.  Certify this case as a class action pursuant to Fed. R. Civ. P. 23(b)(2) and (3);

B.  Actual damages for injuries suffered by Plaintiff and the Class;

C.  Injunctive relief;

D.   Reasonable attorney's fees and costs of this action, statutory damages, liquidated damages, punitive damages and pre-judgment interest under the New York Labor Law on behalf of the Class and/or the New York City Human Rights Law, New York State Human Rights Law and the New York GBL § 349 on behalf of the Subclass; and

E.   Such other relief as this Court may deem just and proper.

## JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury of all claims so triable.

Dated:  August 16, 2022
New York, New York

Giskan Solotaroff & Anderson LLP

*/s/ Catherine E. Anderson*
Catherine E. Anderson, Esq.
90 Broad Street, 2nd Floor
New York, NY 10004
Tel: (212) 847-8315 x 12
Email: canderson@gslawny.com

*Counsel for Plaintiff and the Class*